UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETUATE SEKONA, | No. 1:19-cv-00529-KES-HBK (PC) |
| Plaintiff, | AMENDED FINAL PRETRIAL ORDER |
| v. | Deadlines: |
| MAGGIE FRANCIS, | Motion in Limine Filing: **July 29, 2024** |
| Defendant. | Oppositions: **August 7, 2024** |
| | Exhibits due to Court: **August, 30, 2024** |
| | Proposed Jury Instructions, Verdict Form, and Voir Dire: **August 20, 2024** |
| | Objections: **August 27, 2024** |
| | Jury Trial: **September 10, 2024, at 8:30 a.m.** Courtroom 6 |

On June 17, 2024, the court conducted a final pretrial conference in this action.  Plaintiff Etuate Sekona appeared pro se via Zoom; Tom Cregger appeared via Zoom as counsel for defendant Maggie Francis.  This matter is set for a jury trial on September 10, 2024, at 8:30 a.m. in Courtroom 6 before District Judge Kirk E. Sherriff and this amended final pretrial order is being issued to set new pretrial deadlines.

1

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983 against defendant Francis.  This action is set for trial on plaintiff's claim against defendant Francis for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

I.   JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343.  Jurisdiction is not contested. The events at issue took place in Kern County, California.  Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b).  Venue is also not contested.

II.   JURY

Both plaintiff and defendant demand a jury trial.  The jury will consist of eight jurors.

III.  UNDISPUTED FACTS

a.   Plaintiff Etuate Sekona is a California state prisoner (AM-9766), and, at the time of the events, was an inmate at Kern Valley State Prison ("KVSP").

b.   At the time of the events, Defendant Maggie Francis was a registered nurse ("RN") at KVSP.

c.   The events occurred at Kern Valley State Prison.

d.   On September 19, 2018, Plaintiff underwent a type of prostate surgery known as a urolift.

e.   Plaintiff's surgery took place at French Hospital in San Luis Obispo, California.

f.   The surgeon was Dr. Gene Hori.

g.   After the surgery, Plaintiff returned to KVSP at approximately 5:00 p.m. on September 19, 2018.

h.   Defendant Francis was the RN who received Plaintiff at KVSP.  Plaintiff was returned to custody once he arrived.

i.   At approximately 10:39 p.m., Dr. Wayne Ulit, a KVSP employee, made a medication order for Tylenol with codeine.

j.   At approximately 11:10 p.m., Defendant took Plaintiff to the triage clinic because Plaintiff complained of pain.

2

k.  While at the triage clinic, RN Negre attended to Plaintiff.

l.  Negre reviewed the medication orders and prepared a dose of Tylenol with codeine.

m.  The medication order prescribed for administration no more than three times per day, as needed, for pain.

n.  The medication order prescribed for the medication to be crushed and floated prior to administration.

o.  When Negre gave Plaintiff the medication, he refused to take it.

p.  Plaintiff began taking Tylenol with codeine on September 20, 2018.

q.  Plaintiff was catheterized and connected to a urine collection bag when he returned to KVSP.

r.  On September 20, 2018, the urine bag was emptied.

s.  Immediately following his return to KVSP, and continuing thereafter for at least seven days, medical personnel saw Plaintiff on a daily basis.

t.  The catheter was removed on September 22, 2018.

IV. <u>DISPUTED FACTUAL ISSUES</u>

a.  Whether, on return to KVSP, Plaintiff had a prescription for pain medication from Dr. Hori.

b.  Whether, on return to KVSP, Plaintiff made any complaints of pain to Defendant.

c.  At what point in time an order was first made for pain medication.

d.  Whether Defendant had the authority to administer pain medication prior to Plaintiff's trip to the triage clinic on September 19, 2018.

e.  Whether Defendant is authorized to prescribe pain medications.

f.  Whether Plaintiff developed any infection secondary to the September 19, 2018, surgery.

g.  Whether there was a delay in administering pain medication between Plaintiff's return to KVSP at approximately 5:00 p.m. and his interaction with RN Negre at the triage clinic at approximately 11:10 p.m.

h.  Whether a delay in administering pain medication contributed to any subsequent injury.

3

V. <u>DISPUTED LEGAL ISSUES</u>

    None listed.

VI. <u>DISPUTED EVIDENTIARY ISSUES</u>

    a.  **Evidentiary Issues** – Defendant

        i.  Whether Plaintiff can offer testimony or other evidence of him developing an infection secondary to the September 19, 2018, surgery.

        ii.  Whether Plaintiff can offer testimony or other evidence of him developing a medical condition secondary to a delay in administration of pain medication on September 19, 2018.

        iii.  Whether Plaintiff can offer testimony or other evidence of Dr. Hori's order for pain medication prior to Plaintiff's return to KVSP on September 19, 2018.

        iv.  Whether Plaintiff can offer testimony or other evidence to the effect that any act or omission of Defendant regarding his medical care on September 19, 2018, and thereafter, fell below the applicable standard or care.

        v.  Whether Plaintiff can offer testimony or other evidence to the effect that any act or omission of Defendant regarding his medical care on September 19, 2018, and thereafter, would result in significant harm to Plaintiff.

        vi.  Whether Plaintiff can offer testimony or other evidence to the effect that, with respect to any act or omission of Defendant regarding Plaintiff's medical care on September 19, 2018, and thereafter, Defendant knew that the same would result in significant harm to Plaintiff.

        vii.  Whether Plaintiff can offer as exhibits medical records containing his handwritten annotations.

        viii.  Whether Plaintiff can offer as exhibits declarations that he prepared.

        ix.  The extent to which the Findings and Recommendations made on Defendant Negre's Motion for Summary Judgment, are determinative of factual issues.

        x.  The extent to which the Screening Order limits Plaintiff's claims.

 b. **Evidentiary Issues** – Plaintiff

 i.  None listed.

VII.   <u>MOTIONS IN LIMINE</u>

The parties have not yet filed motions in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  The court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Id*.  The court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.

In advance of filing any motion in limine, the parties shall meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.

Any motions in limine the parties intend to file must be filed with the court no later than **July 29, 2024**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.  Any opposition to the motion must be served on the other party and filed with the court no later than **August 7, 2024.**  After reviewing the motions and any opposition briefs, the court will notify the parties if a reply brief is necessary.  As such, parties shall **<u>not</u>** file any reply briefs without court approval.  The court will also notify the parties if it will hear argument on any motions in limine prior to the first day of trial.  The parties are reminded they may still object to the introduction of evidence during trial.

VIII.   <u>SPECIAL FACTUAL INFORMATION</u>

Special factual information pursuant to Local Rule 281(b)(6) is not applicable to this action.

IX. <u>RELIEF SOUGHT</u>

 a.   **Plaintiff**

 i.  Plaintiff seeks $100,000.00 in damages.  Plaintiff does not specify whether he seeks punitive damages as part of this amount.

 b.   **Defendant**

 i.  Defendant seeks judgment in her favor, costs, and attorney's fees.

5

X. <u>POINTS OF LAW</u>

    a. **42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other propre proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012).

    Under 42 U.S.C. § 1983, a plaintiff is required to prove that the defendant (1) acted under color of state law and (2) deprived him of federally protected constitutional rights. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42 (1988). A plaintiff must demonstrate that the defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability under Section 1983, and the defendant is only liable for his own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1948-49 (2009); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Monell v. Dept. of Social Services*, 436 U.S. 658, 691-92 (1978).

    b. **Eighth Amendment Medical Deliberate Indifference**

    Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). *See McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). On the objective prong, a "serious"

medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). On the subjective prong, a prison official must know of and disregard a serious risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S. at 104-05.

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "*should have been aware*" of a risk, but in fact was not—the official has not violated the Eighth Amendment. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference. *Estelle*, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429 U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013). Misdiagnosis alone is not a basis for a claim of deliberate medical indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). A delay in treatment, without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726

1    F.3d at 1074.

2        c.  **Punitive Damages**

3        The plaintiff has the burden of proving what, if any, punitive damages should be awarded

4    by a preponderance of the evidence.  NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5

5    (2018).  The jury must find that the defendants' conduct was "motivated by evil motive or intent,

6    or . . . involves reckless or callous indifference to the federally protected rights of others."  *Smith*

7    *v. Wade*, 461 U.S. 30, 56 (1986); *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

8        d.  **Compensatory Damages**

9        Under 42 U.S.C. § 1997e(e), an inmate may not recover compensatory damages for mental

10   or emotional injuries suffered while in custody without a prior showing of physical

11   injury.  However, in *Oliver v. Keller,* 289 F.3d 623 (9th Cir. 2002), the Ninth Circuit held that to

12   the extent a plaintiff has actionable claims premised on constitutional violations, his claims are not

13   limited by § 1997e(e).  Accordingly, district courts in the Ninth Circuit consistently conclude that

14   if a plaintiff states a constitutional claim, as opposed to one for mental or emotional injuries, the

15   physical injury requirement of § 1997e(e) does not bar the award of compensatory damages.  *See*

16   *e.g.*, *Cockcroft v. Kirkland,* 548 F. Supp. 2d 767, 776-77 (N.D. Cal. 2008) ("§ 1997e(e) does not

17   apply to claims for compensatory damages not premised on emotional injury . . . [t]he fact that

18   Cockcroft never suffered any physical injury as a result of [defendant] Linfor's alleged acts may

19   make his Eighth Amendment claim of very little financial value but does not make the claim non-

20   existent."); *Low v. Stanton,* WL 234859, *4 (E.D. Cal. Jan. 14, 2010) (finding that plaintiff may

21   recover compensatory damages for the violation of his Fourteenth Amendment rights).

22       e.  **Qualified Immunity**

23       Qualified immunity applies when an official's conduct does not violate clearly established

24   statutory or constitutional rights of which a reasonable person would have known.  *White v. Pauly*,

25   137 S. Ct. 548, 551 (2017).  Officers are entitled to qualified immunity under Section 1983 unless

26   (1) the officers violate a federal statutory or constitutional right, and (2) the unlawfulness of their

27   conduct was "clearly established at the time."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

28   (2018); *White*, 137 S. Ct. at 551.

"Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *See Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). This is a "demanding standard" that protects "all but the plainly incompetent or those who knowingly violate the law." *Wesb*y, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, to be "clearly established," a rule must be dictated by controlling authority or by a robust consensus of cases of persuasive authority. *Wesby*, 138 S. Ct. at 589.

### f.   Impeachment by Evidence of Prior Felony Convictions

Federal Rule of Evidence 609(a)(1)(A) provides that evidence of a conviction for a crime punishable for more than one year is admissible, subject to Rule 403, in a civil case to attack a witness's character for truthfulness. Fed. R. Evid. 609(a)(1)(A). Additionally, any incarcerated witness who testifies is also subject to impeachment under Rule 609. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or release from confinement from it. Fed. R. Evid. 609(b).

**ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY LISTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW ARE DISMISSED AND DEEMED WAIVED.**

XI.   <u>ABANDONED ISSUES</u>

None.

XII.   <u>WITNESSES</u>

Plaintiff's witnesses shall be those listed in Attachment A. Defendant's witnesses shall be those listed in Attachment B. Each party may call any witnesses designated by the other. The assigned magistrate judge will issue an order addressing the status of plaintiff's witnesses and any further steps plaintiff shall take with regards to his witnesses.

**The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

a.   The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference; or

b.  The witness was discovered after the pretrial conference and the proffering party makes the showing required in Paragraph C, below.

c.  Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witness so the court may consider whether said witness shall be permitted to testify at trial.  The witness will not be permitted unless:

   i.  The witness could not have reasonably been discovered prior to the discovery cutoff;

   ii.  The court and opposing parties were promptly notified upon discovery of the witness;

   iii.  If time permitted, the party proffered the witness for deposition; and

   iv.  If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XIII.  <u>EXHIBITS, SCHEDULES, AND SUMMARIES</u>

a.  **Exhibit Binders**

   i.  Plaintiff's exhibits are listed in **Attachment C**. Defendant's exhibits are listed in **Attachment D**.  The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the following specifications:

      1.  Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.).

      2.  Defendant's exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX-201, etc.) and shall be separated by tabs.

      3.  Joint exhibits shall be pre-marked with the prefix "JT" and numbered sequentially beginning with 1 (e.g., JT-1, JT-2, etc.), and defendant's counsel shall submit the original and two (2) copies of the joint trial exhibits, with exhibit lists and separated by tabs.

4. Exhibits that are multiple pages shall be marked with page numbers in addition to the prefix and exhibit number, on each page of the exhibit (e.g., PX-100, page 1 of 2, PX-100, page 2 of 2, etc.).

5. Each binder shall have an identification label on the front and spine.

ii. **The parties shall submit exhibit binders to Courtroom Deputy, Victoria Gonzales, no later than August 30, 2024.**

b. **Exchange of Trial Exhibits**

i. The parties shall also serve one (1) copy of all trial exhibits, along with their exhibit list, on each other no later than **August 9, 2024,** and any objections thereto are due no later than **August 23, 2024**. This includes any demonstrative evidence the parties intend to use.

c. **Use of Undisclosed Exhibits**

i. **The court does not allow the use of undisclosed exhibits for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

1. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

2. The exhibit was discovered after the issuance of this order **and** the proffering party makes the showing required in paragraph a, below.

a. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

i. The exhibits could not have reasonably been discovered earlier;

ii. The court and the opposing parties were promptly informed of their existence; and

11

iii.   The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party.  If the exhibits may not be copied, the proffering party must show that it has made the exhibits reasonably available for inspection.

XIV.   <u>DISCOVERY DOCUMENTS</u>

a.   The parties indicated at the pretrial conference that they do not anticipate using any deposition transcript at trial.  If that changes, the parties must lodge with the Clerk of Court, no later than **August 30, 2024**, a copy of any deposition transcript to be used at trial.

b.   The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial.  **NO DISCOVERY DOCUMENTS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."**  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

   i.   **<u>Plaintiff's Proposed Discovery to be Proffered at Trial</u>**

      1.   Defendant's answer to the complaint, dated January 14, 2020.

   ii.   **<u>Defendant's Proposed Discovery to be Proffered at Trial</u>**

      1.   None listed.

XV.   <u>FURTHER DISCOVERY OR MOTIONS</u>

Plaintiff and defendant state that no further discovery is necessary.  Defendant intends to file motions in limine.  If appropriate, defendant may move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the close of plaintiff's case in chief and before the case is submitted to the jury.  Furthermore, defendant intends to file specific objections to plaintiff's exhibits once parties exchange exhibits.  Law and Motion and Discovery are closed in this case. There is no indication in plaintiff's pretrial statement that he intends to file any additional motions.

XVI.   <u>STIPULATIONS</u>

Defendant is willing to stipulate to the authenticity of plaintiff's CDCR Corrections and Medical files.

XVII.   <u>AMENDMENTS/DISMISSALS</u>

None.

XVIII.   <u>SETTLEMENT</u>

The parties participated in settlement conferences on July 18, 2022, and April 17, 2023. Both settlement conferences resulted in an impasse.  Plaintiff intends to send a written settlement demand to defense counsel by June 21, 2024.   After receiving plaintiff's settlement proposal, defense counsel will notify the court if the parties believe that a further settlement conference before a magistrate judge prior to trial would be useful.

XIX.   <u>JOINT STATEMENT OF THE CASE</u>

The court has drafted the following neutral statement of the case to be read to the prospective jurors:

> Plaintiff claims that, while he was incarcerated as a state prisoner, defendant Francis was deliberately indifferent to his serious medical needs by failing to timely provide pain medication.

XX.   <u>SEPARATE TRIAL OF ISSUES</u>

There will be no separate trial of issues in this action.  However, the court will bifurcate the trial with respect to the amount of punitive damages, if necessary.  Should a jury find punitive liability in the first phase of the trial, the trial will proceed to a second phase which will consist of any evidence and argument with respect to the appropriate amount of punitive damages.  The parties may not present evidence regarding the amount of punitive damages until the second phase of the trial.

XXI.   <u>IMPARTIAL EXPERTS/LIMITATION OF EXPERTS</u>

None.

XXII.   <u>ATTORNEYS' FEES</u>

Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

1    Defendant will seek an award of attorney's fees and costs as appropriate.

2    XXIII. <u>TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS</u>

3    Special handling of prison records and photographs may be appropriate as to any

4    confidential information where disclosure may compromise the safety and security of the

5    institution, staff, or other inmates.

6    If defendant is required to disclose information concerning their financial status, they will

7    request that the court issue a protective order concerning this information, under Local Rule

8    141.1(b)(2).

9    Pursuant to the court's policy, at the end of the trial, the court will return all exhibits to their

10    proffers to be retained during the pendency of any appeals.

11    XXIV. <u>MISCELLANEOUS</u>

12    None.

13    XXV. <u>ESTIMATED TIME OF TRIAL/TRIAL DATE</u>

14    Jury trial is set for **September 10, 2024, at 8:30 a.m. in Courtroom 6** before District Judge

15    Kirk E. Sherriff.  Trial is anticipated to last 3-5 court days.  The parties are directed to call Victoria

16    Gonzales, courtroom deputy, at (559) 499-5676, one week prior to trial to ascertain the status of

17    the trial date.

18    XXVI. <u>PROPOSED JURY VOIR DIRE, JURY INSTRUCTIONS, AND VERDICT FORM</u>

19    a.  **Proposed Jury Voir Dire**

20    i.  The parties shall file any proposed jury voir dire by **August 20, 2024**.  Each

21    party will be limited to twenty minutes of jury voir dire, unless they show good

22    cause for additional time.

23    b.  **Proposed Jury Instructions and Proposed Verdict Form**

24    i.  **The court directs the parties to meet and confer, if possible, to generate a**

25    **joint set of jury instructions and a joint verdict form.**  The parties shall file

26    any such **joint** set of instructions by **August 20, 2024**, identified as "Joint Jury

27    Instructions and Verdicts."  The parties shall file any agreed upon verdict form

28    as a "Joint Proposed Verdict Form."  If the parties cannot agree upon certain

14

specific jury instructions and/or the verdict form, defendant shall file proposed jury instructions and a proposed verdict form as provided in Local Rule 163 by **August 20, 2024**.  Plaintiff is not required to file proposed jury instructions or a proposed verdict form, but if he wishes to do so, he must file them by **August 20, 2024.**

   ii.  The parties shall indicate on any proposed jury instructions or proposed verdict form the party submitting the proposed instructions or verdict form (i.e., Joint, Plaintiff's, or Defendant's).

   iii.  The parties shall also include on all proposed jury instructions the following:

      1.  The number of the proposed instruction in sequence.

      2.  A brief title for the instruction describing the subject matter.

      3.  The complete text of the instruction.

      4.  The legal authority supporting the instruction.

      5.  The parties shall, by italics or underlining, designate any modification from statutory or case authority, or any pattern or form instruction, or any other source of pattern instructions.

      6.  The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

      7.  All blanks in form instructions should be completed and all brackets removed.

   iv.  Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is covered by the model instructions, including for all standard instructions.  State model jury instructions, such as BAJI or CACI instructions, shall be used where applicable as to state law claims.  The parties shall designate, by italics or underlining, any proposed modification of instructions from any pattern instruction, such as the Ninth Circuit Model Civil Jury Instructions or other pattern instructions, or from statutory or case authority.  The parties must specifically state the modification made to the standard instruction and the legal

15

authority supporting the proposed modification. All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative instructions will not be given and must not be submitted.

    v.  Defendant shall e-mail a copy of all proposed jury instructions and any proposed verdict form, whether agreed or disputed, other than a jury instruction or verdict form proposed solely by plaintiff, as a Word document to kesorders@caed.uscourts.gov no later than **August 20, 2024**.

   c.  **Objections to proposed jury instructions**

    i.  The parties must file any objections to proposed jury instructions by **August 27, 2024**. Each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority. When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

## XXVII.   <u>TRIAL BRIEFS</u>

The parties are relieved of their obligation under Local Rule 285 to file a trial brief. If any party wishes to submit a trial brief, they must do so by **August 30, 2024**.

## XXVIII.   <u>COMPLIANCE WITH PRETRIAL ORDER</u>

Strict compliance with this pretrial order and its requirements is mandatory. The court will enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to comply fully with this order and its requirements. The Court will modify the pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure, the Local Rules, and the court's orders. Failure to do so will make the parties and/or counsel subject to sanctions.

IT IS SO ORDERED.

   Dated:  <u>June 17, 2024</u>

                                                      _____

                                                 UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT A: Plaintiff's Witnesses**

| | Individual | Fact v. Expert | Contact Information |
|---|---|---|---|
| 1. | Correction Officer Tabia | Fact | c/o Kern Valley State Prison |
| 2. | Elvis Negre, RN | Fact | c/o Kern Valley State Prison |
| 3. | Correction Officer Hernandez | Fact | c/o Kern Valley State Prison |
| 4. | Correctional Officer Commagay | Fact | c/o Kern Valley State Prison |
| 5. | Correctional Officer Villa | Fact | c/o Kern Valley State Prison |
| 6. | Gene Hori, M.D. | Fact | 4251 S. Higuera St. San Luis Obispo, CA 93401 |
| 7. | Dr. Zepp | Fact | c/o Kern Valley State Prison |
| 8. | Melinda Cook, LVN | Fact | c/o Kern Valley State Prison |
| 9. | Raman Kaur, LVN | Fact | c/o Kern Valley State Prison |

**ATTACHMENT B: Defendants' Witnesses**

| | Individual | Fact v. Expert | Contact Information |
|---|---|---|---|
| 1. | Maggie Francis, RN | Fact/Expert | c/o Cregger Law, LLP |
| 2. | Elvis Negre, RN | Fact/Expert | c/o Justin Walker, Deputy Attorney General<br>1300 I St., Ste. 125<br>P.O. Box 944255<br>Sacramento, CA 94244 |
| 3. | Andrew Zepp, M.D. | Fact/Expert | c/o Kern Valley State Prison |
| 4. | Wayne Ulit, M.D. | Fact/Expert | c/o Kern Valley State Prison |
| 5. | Jeffery Wang, M.D. | Fact/Expert | c/o Kern Valley State Prison |
| 6. | Gene Hori, M.D. | Fact/Expert | 4251 S. Higuera St.<br>San Luis Obispo, CA 93401 |
| 7. | Marta Speath, M.D. | Fact/Expert | c/o Kern Valley State Prison |
| 8. | CDCR Custodian of Records | Fact | |

1

**ATTACHMENT C:  Plaintiffs' Exhibits**

2

| Ex. | Description | Beginning Bates Nos. | Ending Bates Nos. |
|---|---|---|---|
| 1. | Dr. G. Hori urolift prostate procedure (Sep. 19, 2018) | | |
| 2. | Medication administration records (Sep. 20, 2018 – Sep. 28, 2018) | | |
| 3. | Defendant's answer to complaint (Jan. 14, 2020) | | |
| 4. | Plaintiff's settlement offer (Jan. 22, 2021) | | |
| 5. | Declaration of inmate Niko Rojo, No. AG 4254 (Sep. 25, 2018) | | |
| 6. | Plaintiff's declaration (Aug. 25, 2018) | | |
| 7. | Plaintiff's 602 grievance showing exhaustion (Dec. 15, 2018) | | |
| 8. | Ultrasound showing kidney injury (Jan. 10, 2019) | | |
| 9. | Foley catheter bag removed (Sep. 22, 2018) | | |
| 10. | Plaintiff's English Tabe Test 2.3 (Nov. 20, 2015) | | |
| 11. | 7362 for hurt kidneys (Dec. 21, 2018) | | |
| 12. | 7362 for missed antibiotic (Sep. 27, 2018) | | |
| 13. | 7362 for kidney abdominal pain (Oct. 4, 2018) | | |
| 14. | 7362 for infection and no antibiotic (Dec. 14, 2018) | | |
| 15. | 7362 for kidney pain (Dec. 26, 2018) | | |
| 16. | 7362 for Dr. Zepp trying to pass cystoscopy (Jan. 1, 2019) | | |
| 17. | 7362 for kidney ultrasound (Jan. 4, 2019) | | |
| 18. | Provider notes instructing medication for Tylenol with codeine for Dysuria (Nov. 19, 2018) | | |
| 19. | Discharge instructions for urolift at San Luis Obispo with Dr. Hori (Sep. 19, 2018) | | |
| 20. | Medical progress note: "1732 PM started TY-C/3, phena, no cipro" (Sep. 20, 2018) | | |
| 21. | Medical administration record: "TY-C/3 2 times phena 2 times" (Sep. 21, 2018) | | |
| 22. | Medical administration record: "First cipro 8:37 a.m. 3 times TY C/3 phena 3 times – 3 times phena" (Sep. 22, 2018) | | |
| 23. | Medical administration record: "TY C/3 3 times phena 3 times no cipro losted [sic] not found" (Sep. 23, 2018) | | |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTACHMENT D:  Defendant's Exhibits**

2

| Ex. | Description | Beginning Bates Nos. | Ending Bates Nos. |
|-----|-------------|---------------------|-------------------|
| 1. | Portions of Plaintiff's Corrections File | | |
| 2. | Portions of Plaintiff's CDCR Medical file, including: (1) records from Dr. Hori and French Hospital, San Luis Obispo, regarding the September 19 surgery and follow-up; and (2) CDCR medical records upon return to KVSP on September 19 and subsequent follow-up treatment | | |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21